Good morning, Your Honor. Jeb Ushela on behalf of Appellant David McIntosh. Your Honors, there are, the Court is aware of the issues that have been raised in this case. I just want to start with the issue of profit loss. There are many, many reasons why this Court should remand the case for resentencing. Some of them are fairly obvious. In Mr. McIntosh's case, his sentence went up approximately two and a half to three years, I believe, based on a loss calculation made in the district court. To begin with, the court failed to file the, failed to prepare, make findings that are clearly required under federal case law. Counsel, the district court said that it adopted the PSR. Is that not sufficient? Your Honor, I don't believe that is in this case. If the district court read the paragraphs in the PSR, would that be sufficient? No, Your Honor, I don't believe so. And the reason for that is the PSR didn't itself make particularized findings. As far as I'm concerned, they did not make kind of particularized findings that were required to support the amount of the fraud loss. If you look at the pre-sentence report, almost every attempt to connect a victim to Mr. McIntosh is made, and this only takes place in two or three places in the report. It doesn't even cover all of the victims. But the only finding that the probation department found was, and they used language such as the victim was contacted or used a telephone number that had some relationship to the defendant. But that's the extent of what the conclusions are in the report. So the question is, as a matter of law, is that sufficient to constitute the kind of particularized findings that are required under the case law in order to find the loss? If the judge had said, gone victim by victim, and said, here's how much I find this is how much they lost, and said, this victim is connected to Mr. McIntosh in this way. In this case, Mr. McIntosh fielded a call and actually spoke with the victim. In the next case, Mr. McIntosh never had any contact with the victim, but he supplied the telephone list that was used to contact the victim. Is that going to be sufficient? Well, if the judge made particularized findings, then we would be here and the posture of this case would be different. I would have. But that would be sufficient to tie your – No. As a matter of law, that would not be sufficient? Well, as a matter of – I would say as a matter of law, but also as a matter of the record. First of all, there's no evidence in the record that I'm aware of that indicates that Mr. McIntosh made a phone call to any of the victims. Well, what about his admissions that he was sort of the middleman between those generating lists and then sending the list to those who were making the calls? So if the PSR included information that these victims were on the list that Mr. McIntosh forwarded to the callers, would that be sufficient? Well, I think the issue that you have there is whether or not Mr. McIntosh did those things knowingly. He's sending a list and he doesn't know what the list is being sent for? Really? Well, there's a difference. May he plead guilty. We all understand that he was involved in a scam operation. His role, you can argue what it was, but knowingly I have a hard time understanding, oh, I didn't know this person was going to be a victim, even though I'm pleading guilty because I'm involved in this large-scale conspiracy. Well, one response to that is when you look at the record as a whole, what you really have is these lists are generated by people who are distributing so-called leads lists. Some of these lists, not all of them, but some of these lists are really analogous to the kind of leads lists that are distributed to all kinds of commercial operators out there, real estate salesmen or everybody else. Well, we have more than that because there's testimony from Mr. Malcolm identifying Mr. McIntosh as a leader, his boss, a recruiter, the person who was the closer. If a person, a victim wasn't coming forward with money, they would forward the call to Mr. McIntosh. And I know he denies all that, but nonetheless the testimony is there that these things occurred, which I think would be sufficient evidence to tie him to the conspiracy and to the actual mail fraud and money laundering. Your Honor, it's our belief that the requirements, the burden on the government in profit loss estimations, to make a profit loss calculation for a victim in a case like this requires more than just finding that the defendant is guilty of a broad conspiracy. No, I agree with you, and I think you're circling back to a stronger argument for your client. It seemed as if you were venturing into a sufficiency of the evidence argument there for a moment, which you've made. I understand you've made it in your brief, but that I think is a different issue from whether the evidence was sufficient to tie him to all the particular victims and roughly $2.5 million in loss and whether the district court then made the appropriate findings. Right. The problem with this case, and it is somewhat analogous to the Lloyd case, but the problem with this case is the government's theory is so broad. I mean, if you're going to believe Malcolm, then there are hundreds, not hundreds, but there are thousands or tens of thousands of people in Jamaica that are involved with this kind of fraud. So let's assume for the argument that we're going to do this. Well, wait a minute. How did Mr. Malcolm implicate 10,000 people? I don't understand that. Well, I don't remember the exact figure or even if he made a figure, but during his testimony, he said, everybody in Jamaica, everybody knows about, you know, sweepstakes fraud, and I don't remember the exact number. Well, I know about sweepstakes fraud. That doesn't make me guilty of conspiracy. And we're focused here, I guess, your principal argument has to do with the calculation for each victim, and nobody's talking about everybody in Jamaica being liable for all the losses suffered by all the victims. There's a focus here on, what is it, 13 or a specified number of people, and you can and have quarreled with the calculation for each of them. I think there's a serious question as to how detailed the calculation by the court has to be to justify the sentence that was imposed. I'm perhaps more interested in that than this notion that everybody in Jamaica knows about the scam. Well, the only reason I was discussing the Jamaica thing is that Malcolm would have had the jury believe that there were very large numbers, I'm going to say, in the range of thousands of people in Jamaica involved in this kind of fraud. But the calculation for your client isn't based on thousands of victims. It's based on a small specific. No, but it's very similar. Well, it's not similar. I forget whether it's 13, but that's not thousands. Okay. The number of victims is not thousands for which your client is held accountable. So for the victims that are listed in the government's brief, they list all of the victims that were not trial victims. Among those listed victims, I don't see anything in the record that supports anything at all except the implication that the probation department makes is that there's, the probation department says there's some kind of connection. We don't know what that is. To say that McIntosh was responsible for everybody who received a leads list, I mean, it seems to me that violates due process and it violates the spirit of the rule. Let me make sure I understand. Everybody who received a lead, you're really talking about everybody whose name was on a lead list that he gave to somebody that led to pursuit of that victim. Why can't he be held responsible for the victims that resulted from names on his lead lists? Well, there's two reasons. Number one, I think it would violate due process. We'd be putting people in prison much longer than Mr. McIntosh or going to prison on the basis of just distributing a leads list. Well, no. If John Doe was victimized and John Doe was roped into this because John Doe's name and number and so forth were on a list distributed by your client, I'm not sure how that violates due process because without your client, John Doe doesn't get victimized. Isn't that the nature of a conspiracy? I mean, is that a co-conspirator is liable for sort of the foreseeable things of the other members of the conspiracy? Your client was convicted of conspiracy. Right. He wasn't convicted of having directly defrauded victim A. Right, right. But the case law requires, as I understand it, the case law requires a particularized finding that the defendant is connected to this each specific victim, that there's reason to believe that. Well, if the name's on the list, isn't that enough? Well, we don't even know. I mean, there's so many things that are missing in the record. We don't know whether McIntosh ever opened the e-mail with the list. They don't know whether he ever read the e-mail with the list. We don't know if other people are. But why would that matter? Because if he admitted that he forwarded the lead list to the people who were making the calls, he doesn't have to read the hundreds of names on the list. His admissions are not tied to any particular time chronologically. But there is evidence. I mean, there is evidence that ties him to a particular time. He signed for the receipt of the packages of cash, I think, in 2017 when he was in Hawaii. There's the e-mail accounts that he's associated with. You know, those have dates on them. Yes. I mean, that's correct. But, Your Honor, when he signed for the packages ostensibly of money that came from NK, and he is not disputing that he's responsible for that if the court upholds his convictions, that was an incident which occurred almost five years after Malcolm's meeting. According to Malcolm's testimony, he met my client, I think, in 2012. And then he says, and after a time I went off on my own. And I started doing this kind of thing on my own. I got my leads directly from other people, and so on and so forth. So it seems to me a little bit of a stretch to say that what somebody may have been doing in 2012, they must necessarily have been doing in 2017. In particular, when one of the named, well, Malcolm was not a named co-conspirator simply because he cooperated, but he was a co-conspirator. Malcolm essentially testified that he departed from the conspiracy, departed from working with my client, and doesn't have any other dealings with my client until he claims he has dealings with my client on NK. Did you want to reserve any time for rebuttal? Yeah, let me reserve what's left of my time, a minute and 15 seconds. Thank you, Your Honor. Good morning, Your Honors. Terry Cris for the government. May it please the Court. The district court did not clearly err in calculating the fraud loss to exceed $1.5 million, and the nature of its findings was not plainly erroneous. I mention that plainly erroneous standard, even though that isn't how we articulate it in the brief, because to some extent I think the argument being presented now, the oral argument and perhaps in the reply brief, is somewhat different from what was actually raised in the objections in the sentencing memorandum. The defendant's sentencing memorandum was more a categorical argument about how we shouldn't consider losses outside of what was presented at trial, and now it looks like the argument as well, the losses that were presented at sentencing are somehow insufficient. The Court didn't make these particularized findings. I would also note that the nature of what the particularized findings are meant to be under the case law is not a line-by-line analysis of each victim and their connection to the conspiracy. According to Lloyd, which is quoting Treadwell, a district court need not proceed item-by-item. Instead, what it has to do is make a particularized finding about, quote, the scope of the criminal activity of the particular defendant that they agreed to undertake. And so that's why. Sotomayor, where in the record did the district court make that finding? The Court made that finding when it said that it believed the defendant was a leader or organizer in this conspiracy. The Court didn't go all the way to apply that enhancement, but factually the Court did believe and said so in the record that this defendant was not a middleman. This defendant was not a bit player. He was, in fact, a leader or organizer. That was not a clearly erroneous finding in light of a lot of evidence, particularly trial evidence from the cooperator Danny Malcolm, who says that the defendant recruited him. He was his boss. He had multiple offices full of people who worked for him. He distributed lead lists. He distributed money. He handed out scripts to tell people what to say on the phone. If they were having trouble, they could refer the call to him because he knew how to, quote, crack a victim. He's making direct calls to victims. He's coming to America to pick up money. He is creating e-mail accounts. He is clearly monitoring the activity of co-conspirators when they're forwarding e-mails to him that they're sending to other people. His involvement is vast, and it's far beyond what he said it was in his admissions. So the Court recognizes all of that. And the higher you go up in a conspiracy, the more of its activities are going to be reasonably foreseeable to you. So cases like Lloyd and Treadwell are making the point that membership in the conspiracy does not automatically make you liable for everything that conspiracy does. However, if you're a leader in the conspiracy, much of its activity is going to be reasonably foreseeable to you. And so the Court, in finding him a leader or organizer and adopting the PSR and rejecting a minor role reduction, is saying, look, this defendant is a leader. His involvement in the conspiracy is such that its activities are reasonably foreseeable. And the Court did not appear to hold him liable for the losses of all the victims that were victimized by the conspiracy. There does seem to be some individual calculations for each defendant. One of the difficulties is that the calculations are reported in the PSR, but it's hard to ascertain what was behind the calculation. Isn't that something of a problem? The government submitted a sentencing memorandum which included a summary chart which contained more information than simply what was in the PSR. So you're saying we can infer the Court made reference and adopted the findings in the PSR. And you're saying we can properly supplement that by referencing the sentencing memorandum? Yes. And one of the reasons I think the record supports that is because the Probation Department responds to the objections in the defendant's sentencing memorandum, which means that it was considering what the defendant said. Also, it would be considering what the government said. And the Probation Department's response includes explanation for why it thinks the defendant was involved and this was relevant conduct. Counsel, if this were a jury finding, we probably would be able to look at the government's chart. But it's a little troubling for you to ask us to look at the government's chart which was submitted to the Probation Department for the preparation of the PSR. Because we have no idea whether the Probation Department said, ah, the government's overreaching with respect to this one. So here are our calculations. And when the district court says, I'm approving what's in the PSR, doesn't that just limit it to what's in the PSR and not allow us to look behind it? No, I don't think so, Your Honor. The Probation Department is making this decision about whether it will sustain or overrule the objection. Then, of course, the district court has to come behind that and make its own determination. And that would include anything submitted to the Probation Department. Well, it would be fine if the district court said, I've looked at the PSR, I've looked at the party's submissions to the Probation Department, and I agree with the government's submission to the PSR. That would get us straight to your exhibit. But when the district court says, I agree with the PSR, doesn't that just limit us to what's in the PSR? No, Your Honor. I think we can consider what the Probation Department considered when computing that PSR. I would also argue this is one of the class of things that would be reviewable for plain error, because this is not what was objected to in the sentencing memorandum. And no point did the defendant say, hey, you can't consider this evidence the government is submitting. You should only consider what was submitted to trial. Well, I mean, they did argue that losses should be limited to trial, but that was more this categorical, you aren't allowed to look past the trial evidence. There's something insufficient about the government's presentation now. So I would say that's a plainly erroneous standard we're looking at for that. But more importantly, district court's findings are reviewable for clear error. The finding does not have to be very precise. It needs to only really be an estimate. Something else important to consider here is we could lose half of these victims and still stay over the $1.5 million threshold, because the court finds fraud loss of about $2.3 million, and the sentencing guideline we're looking at, the threshold is $1.5 million. So even if there were some problem with a handful of these, it would be harmless, because we would stay over that $1.5 million threshold. And if you do look at the evidence, there are many connections to the conspiracy. Some of these people are sending their boxes of cash to the same address as the trial victim sending boxes of cash. Some of these people, their numbers, phone numbers, are appearing in e-mails and correspondence between the court conspirators. We don't have to have a one-to-one connection to the defendant himself, given that he's a leader. The activities of the people in the conspiracy he's involved with are also relevant. As for this timeline issue, I would add that we shouldn't cut the timeline for the conspiracy short. We absolutely can consider all the way to 2017. One of the facts that's important to keep in mind here is, indeed, that's the year that the defendant goes to Hawaii to pick up that box from the victim, N.K. Malcolm testifies that he worked on the victim, N.K. He actually called her, transferred her over to the defendant, and they had a bit of a squabble about her, because each of them was independently calling her, trying to get more money out of her, and this led to a disagreement between the two of them. So even if we thought that mostly Malcolm had gone his separate way by then, although the timeline's hazy on that, too, clearly they're still working together on some level, at least up to that point. So I don't think it's fair to say that they're essentially independent conspiracies at that point. Also, looking at the sufficiency of the trial evidence for just a minute, all of those counts aren't really regarding the victim anyway. They're regarding a different victim, L.G., and if you look at the other summary chart that we submitted in the SCR with all the connections, it's very easy to see that multiple co-conspirators are working on all of these people at the same time. This is not a situation with parallel conspiracies. These people all have some connection to each of these victims. So if we were to conclude that the district court's errors on the amount of loss, that the district court's findings were not sufficient, what would be the remedy? The remedy would be a remand for the district court to recalculate that loss. What about the rest of the sentencing issues, because that loss calculation affected the total offense level number? That's true. I think the court could do a limited remand simply on the issue of fraud loss, and if the court came to the same conclusion, then there would be no need for a full-on resentencing. So I don't think that the remand has to be a full resentencing immediately, since we can handle this issue through a limited remand. If the court were to decide that it would not have reached the same result, then perhaps we would have to proceed to a full resentencing, but I don't think we're there yet. So you're suggesting, how would that work? We would do a limited remand, the district court would make findings on the loss amount, if they reach a different conclusion, then what? Then the district court opens it up and has a full resentencing? Yes, I think that would be right. But if the court came to the same conclusion that it exceeded the $1.5 million threshold, then we wouldn't need to reopen the full resentencing. Well, what difference would it make? If we send it back for resentencing and the district court reaches the same lost conclusion, the district court may then reach the same result on all the other sentencing issues. I don't see why we would just carve this up. Essentially, for a judicial economy, there would be no reason to relitigate the rest of the sentence if the court is going to come to the same conclusion that this sentence enhancement was valid and the sentencing guidelines range remained the same. Wouldn't you still have a question about the restitution amount? That's a finite, precise number. True, but that's not an issue on appeal. The defendant has not objected to the restitution amount. It's not been raised as an issue on the opening brief. To the extent that there are any issues about them, they're waived and abandoned. So there's no reason to think that there would be a new restitution inquiry in this case, even if the fraud loss were recalculated. So in the defendant's brief, he argued that if this case were remanded for resentencing, it should be a do-over. It should be a complete resentencing, not just a partial resentencing. And I didn't see any response in the government's brief. Could we conclude the government's waived any argument on that point? No, because we argue that their sentencing was valid. His argument is largely based on both of his sentencing claims, and his other claim is the rejection of the minor role reduction, which we respond to in the brief. And I've briefly alluded to here the finding that the defendant was a leader or organizer is mutually exclusive with a finding of minor role. So the court correctly didn't clearly err in rejecting minor role reduction. So really the only sentencing issue that would be at play is this fraud loss calculation. And as I've said, I don't think it's necessary for a full remand when the court could have a limited inquiry into that, assuming that that would be legally compelled, which of course we're still maintaining it's not. I think that's a different issue. Yes, the government argued in their brief that the loss calculation findings were sufficient and that the district court's findings with respect to whether she should have minor role reduction were sufficient. I understand that. That was all in your brief. But I didn't see anything in the government's brief saying, well, we're responding to the defendant's argument that this should be a full resentencing. And instead we think it should only be a limited resentencing for these reasons. I mean, is it in the brief and I just missed it? I don't think it was there. I don't believe I explicitly make that point. I think it's more implied in the idea that we think there's no error in this case and that if this court were to fashion a remedy, it would be the most judicially economical one. Thank you. If this court has no further questions, we respectfully request that it affirm both the conviction and the sentences. Thank you. All right, thank you. Your Honors, just briefly, number one, by my calculations, looking at the record that I have available to me, the amount of fraud loss that can be proven is only marginally above the 785,000, I think, that was calculated for the trial victims, the three trial victims. The rest of the victims, I think it's really up in the air. The conclusions that the probation department reaches really are so vague and so ill-defined that they amount to speculation. And this court has no record, frankly, the victims that were listed in the government's brief, this court has no record about those people at all other than what probation said. And probation is making, you know, generalized comments, speculating, based on there's no evidence that this court has to look at to resolve those particular issues. I would add one final thing. Lloyd and some other cases have emphasized the importance of, in cases where fraud loss is in question, to look at the defendants, try to trace profits, look to see if there are profits coming from a victim that the government seeks to include in the fraud loss calculation. And in this case, there's no evidence of that. Only the trial victims, the three trial victims are the only victims that I am aware of where the government can tie those victims to any profit that went in the direction of Mr. McIntosh. Thank you. Thank you. Counsel, thank you both for your arguments this morning. And this case is submitted.
judges: CLIFTON, BYBEE, BADE